IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NANCY ELLIOTT, | |
| Plaintiff, | |
| v. | |
| SPECIALIZED LOAN SERVICING, | CIVIL ACTION FILE NO. |
| Defendant/Third Party Plaintiff, | 1:16-cv-4804-TWT-JKL |
| v. | |
| MCCURDY & CANDLER, LLC, | |
| Third Party Defendant. | |

## **NON-FINAL REPORT AND RECOMMENDATION**

In this wrongful foreclosure case, Plaintiff Nancy Elliott alleges that Defendant Specialized Loan Servicing LLC ("SLS") wrongfully foreclosed on her property and failed to timely distribute excess proceeds from the foreclosure sale to her. [Doc. 2.] On August 31, 2017, SLS filed a third-party complaint against its foreclosure counsel, Third Party Defendant McCurdy & Candler, LLC ("McCurdy & Candler"), asserting claims for indemnification and contribution pursuant to a legal services agreement between SLS and McCurdy & Candler that governed,

among other things, McCurdy & Candler's responsibilities as foreclosure counsel. [Doc. 53.] McCurdy & Candler was served with process on August 31, 2017; however, it failed to answer or otherwise respond to the third-party complaint by September 21, 2017. [*See* Doc. 54.] On September 27, 2017, the Clerk entered default against McCurdy & Candler upon SLS's motion for entry of default. [*See* Doc. 56, Doc. Entry dated Sept. 27, 2017.] On October 4, 2017, McCurdy & Candler moved to set aside the default under Federal Rule of Civil Procedure 55(c). [Doc. 59.] SLS opposes the motion. [Doc. 60.] Elliott has not filed a response to the motion, and the time for McCurdy & Candler to file a reply has passed.

For the reasons that follow, I **RECOMMEND** that McCurdy & Candler's motion to set aside the default be **GRANTED**.

### I. Standard for Setting Aside Entry of Default

Under Federal Rule of Civil Procedure 55, when a defendant fails to "plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). However, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Whether "good cause" exists is a liberal standard, highly dependent on the circumstances of the particular case at bar. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 n.7 (11th

Cir. 2014); *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). In determining whether to set aside an entry of default, courts consider (1) the reason for the default, and whether the default was culpable or willful, (2) whether setting aside the default would prejudice the nonmoving party, (3) whether the defaulting party has presented a meritorious defense, and (4) whether the defaulting party acted promptly to correct the default. *Id*.[1] The Rule 55(c) "good cause" standard "utilized in setting aside an entry of default" is less rigorous than "[t]he excusable neglect standard that courts apply in setting aside a default judgment." *E.E.O.C. v. Mike Smith Pontiac GMC, Inc*., 896 F.2d 524, 528 (11th Cir. 1990). "[D]efaults are seen with disfavor because of the strong policy of determining cases on their merits," *Fla. Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993), and courts in this district have repeatedly emphasized that "defaults are not favored in federal court and trials on the merits are the preferred method for resolving disputes" *see, e.g.*, *Ritts v. Dealers Alliance Credit Corp.*, 989 F. Supp. 1475, 1480 (N.D. Ga. 1997) (citation

---

[1] **Error! Main Document Only.** Depending on the circumstances, the Court may also consider whether the public interest was implicated and whether there would be significant financial loss to the defaulting party. *Perez*, 774 F.3d at 1338; *see also S.E.C. v. Johnson*, 436 F. App'x 939, 945 (11th Cir. 2011).

omitted); *Scottsdale Ins. Co. v. BPS Intl., Inc.*, 4:15-CV-0180-HLM, 2016 WL 9455171, at *7 (N.D. Ga. Apr. 29, 2016); *Life Ins. Co. of N.A. v. Williams*, 1:15-CV-00062-ELR, 2015 WL 10961833, at *2 (N.D. Ga. May 22, 2015); *see also Blau v. Bill Heard Chevrolet Corp.-Orlando*, 422 B.R. 293, 302 (N.D. Ala. 2009) (collecting circuit court opinions regarding the "universally recognized principle that defaults are not favored in the law").

## II. Discussion

### A. The Parties' Arguments

McCurdy & Candler argues that good cause exists to set aside the entry of default because it was improperly named in this action. According to McCurdy & Candler, a separate entity, "McCurdy & Candler, Bankruptcy/Foreclosure LLC," which is now defunct, performed the foreclosure that gave rise to this case. [Doc. 59 at 4; Doc. 59-1 at 2-3.] Michael Dugan, a member of both McCurdy & Candler and McCurdy & Candler, Bankruptcy/Foreclosure LLC, has submitted a declaration in which he states that because SLS served McCurdy & Candler's registered agent instead of alerting him to the third-party complaint against McCurdy & Candler, Bankruptcy/Foreclosure LLC, the latter's reporting of the

4

claim to its insurance carrier and that appointment of defense counsel was delayed. [*Id.* at 5.]

McCurdy & Candler also argues that McCurdy & Candler, Bankruptcy/Foreclosure LLC has a meritorious defense to the third-party claims because it sent all the foreclosure sale proceeds to SLS within days of the foreclosure sale, and, therefore, it was SLS's failure to timely distribute the proceeds that damaged Elliott, not any act on its own part. [Doc. 59 at 5-6; Doc. 59-1 at 3.]

SLS responds that McCurdy & Candler's failure to respond or otherwise answer the complaint was intentional or reckless because it is a law firm and therefore is familiar with the rules of civil procedure, its obligations to respond to a lawsuit, and the consequences of failing to respond. [Doc. 60 at 7.] The fact that McCurdy & Candler believes that it is not the proper defendant is no basis for completely failing to respond to the lawsuit. [*Id.*] SLS further argues that McCurdy & Candler's assertion that it is not a proper party is without merit because the legal services agreement pursuant to which SLS is asserting its third-party claims is between "McCurdy & Candler, LLC" and SLS. [*Id.* at 60; *see* Doc. 60-1 (legal services agreement naming "McCurdy & Candler, LLC" as a party).]

SLS additionally argues that McCurdy & Candler's argument that it is not liable because it remitted the foreclosure proceeds to SLS "misses the point" that "SLS is entitled to indemnification from McCurdy & Candler precisely *because* McCurdy & Candler remitted the funds to SLS." [Doc. 60 at 9.] SLS explains that McCurdy & Candler was required to disburse the excess proceeds of the foreclosure sale and not simply remit them the SLS. [*Id.*] Further, when SLS returned the excess proceeds of the sale to McCurdy & Candler for distribution, McCurdy & Candler refused to do so. [*Id.*]

SLS also notes that McCurdy & Candler was responsible for sending foreclosure notices that complied with Georgia law. [Doc. 60 at 10.] In the event that the notice of the foreclosure sale was wrongful, SLS would be entitled to indemnification with respect to the claim. [*Id.* at 10.] McCurdy & Candler, however, fails to address that basis for indemnification. [*Id.*]

Finally, SLS argues that it would be prejudiced by the opening of the default given the lack of a meritorious defense. [Doc. 60 at 10.]

## B. Analysis

### 1. McCurdy & Candler's Culpability

McCurdy & Candler's excuse for not filing a timely answer or response is not persuasive. McCurdy & Candler states that it was served through its registered agent, and the registered agent forwarded the third-party complaint to Mr. Dugan. [Doc. 59-1 at 4.] But there is nothing unusual about that procedure—after all, service on a business entity's registered agent is an appropriate means to effect service of process. Mr. Dugan gives no specifics as to *why* service on the registered agent purportedly delayed the response in this lawsuit.

I also agree with SLS that McCurdy & Candler's complete silence in the face of the answer is not innocent because McCurdy & Candler is a law firm, and therefore understands the importance of filing an answer. McCurdy & Candler's excuse that additional time was required to retain counsel is not convincing, as there are no details in the record concerning when outside counsel was retained.

In sum, I find that McCurdy & Candler's conduct caused the default, and that it had some culpability in doing so. Accordingly, this factor weights against setting aside the entry of default.

### 2. Prejudice to SLS

I conclude the lack of prejudice weights in favor of setting aside the entry of default. This case is still in its early stages, and the small delay[2] in this case caused by McCurdy & Candler's late response will not materially prejudice SLS. Moreover, this case is a renewal of a state court action in which Mr. Dugan appeared and testified as a 30(b)(6) witness on behalf of McCurdy & Candler; thus, it appears that the parties have already conducted some discovery that may be relevant to SLS's third-party claims.

### 3. Meritorious Defenses

McCurdy & Candler's purported defenses that it identifies in its motion are confusing. Its principal defense is that it is not a proper party, and that instead its now-defunct sister company McCurdy & Candler, Bankruptcy/Foreclosure LLC, is the proper party because it actually handled the foreclosure. [Doc. 59 at 4.] But the legal services agreement that gives rise to SLS's indemnity claim is between SLS and McCurdy & Candler—not McCurdy & Candler, Bankruptcy/Foreclosure LLC. [*See* 60-1 at 2.]

---

[2] SLS moved for entry of default four days after McCurdy & Candler's answer was due, and McCurdy & Candler moved to set aside default a week later. [Docs. 56, 59].

The other defense that McCurdy & Candler identifies is that McCurdy & Candler, Bankruptcy/Foreclosure LLC sent all the foreclosure proceeds to SLS within days of the foreclosure sale. [Doc. 59 at 5; Doc. 59-1 at 3.] SLS maintains that McCurdy & Candler was required to distribute the excess proceeds to Elliott, and points to Mr. Dugan's deposition transcript in which he acknowledged that in May 2014, SLS wired the excess proceeds to McCurdy & Candler, but the funds were not distributed. [*See* Doc. 60-3.] The record, however, is unclear at this point as to precisely what McCurdy & Candler's role was with respect to distribution of the excess proceeds. The foreclosure sale occurred in September 2013, and according to Mr. Dugan's declaration, the proceeds from that sale were transferred to SLS within days of the sale. SLS then transferred what it calculated as the excess proceeds back to McCurdy & Candler in May 2014, some eight months later. The substance of Elliott's claim, however, is that the excess proceeds were not distributed to her immediately after the foreclosure sale. Thus, the fact that SLS transferred funds to McCurdy & Candler in May 2014, might be irrelevant if SLS should have distributed the funds sooner.

At this point, given the low bar to show that entry of default should be set aside, I find that McCurdy & Candler has met its burden—albeit just barely—to

9

show a meritorious defense. Thus, I conclude that this factor weights in favor of setting aside the entry of default.

### 4. Prompt Action to Correct Default

As noted above, McCurdy & Candler moved to set aside the entry of default within seven days of the Clerk's entry of default. I find that this factor weights in favor of setting aside the entry of default.

## III. Conclusion

Considering the relevant factors and applying the liberal standard for setting aside the entry of default, I conclude that McCurdy & Candler has met its low burden to demonstrate good cause to set aside the entry of default in this case. Accordingly, it is **RECOMMENDED** that McCurdy & Candler's Motion to Set Aside Default [Doc. 59] be **GRANTED**.

It is **FURTHER RECOMMENDED** that if the District Judge adopts this recommendation, McCurdy & Candler answer or otherwise respond to the Third Party Complaint within **seven (7) days** of the order adopting this report and recommendation.

IT IS SO RECOMMENDED this 8th day of November, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge